IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2017

**JEFFREY PERRY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 12-01672     Lee V. Coffee, Judge

_____

**No. W2016-00722-CCA-R3-PC**
_____

The Petitioner, Jeffrey Perry, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his convictions of especially aggravated kidnapping, aggravated robbery, aggravated burglary, aggravated assault, and employing a firearm during the commission of a dangerous felony and resulting effective sentence of twenty-one years in confinement. On appeal, the Petitioner contends that he did not enter his guilty pleas voluntarily and that he received the ineffective assistance of trial counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Christie Hopper (on appeal), Jackson, Tennessee, and Eugene Belenitsky (at hearing), Memphis, Tennessee, for the appellant, Jeffrey Perry.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

In April 2012, the Shelby County Grand Jury indicted the Petitioner for especially aggravated kidnapping, a Class A felony; aggravated robbery, a Class B felony; aggravated burglary, a Class C felony; aggravated assault, a Class C felony; and employing a firearm during the commission of a dangerous felony, a Class C felony.

Trial counsel was appointed to represent the Petitioner in January 2013 and filed a motion to suppress the State's DNA evidence, which the trial court denied. On May 7, 2014, the Petitioner pled guilty as a Range I offender to the offenses and, pursuant to the plea agreement, received respective sentences of fifteen years to be served at 100% release eligibility, eight years to be served at 85%, three years to be served at 30%, three years to be served at 30%, and six years to be served at 100% with the six-year sentence to be served consecutively to the other sentences for a total effective sentence of twenty-one years. The effective twenty-one-year sentence also was to be served consecutively to a separate three-year sentence for aggravated burglary.

At the guilty plea hearing, the State gave the following factual account of the crimes:

> [O]n June the 28th of 2011, the victim, Ms. Summerlin, was returning to her apartment [on] Wall Street in Memphis and Shelby County, when she was approached by a group of young men. One of them was armed with a handgun. They demanded her property and took her inside her apartment where they went through her apartment and were prepared to take some of her property from the apartment, as well.
>
> She was held at gunpoint, knocked to the ground and not allowed to leave. She was actually on the phone when she [was] pulled into the apartment, and the friend that she was on the phone with called the police.
>
> The police arrived on the scene while all these individuals were still in Ms. Summerlin's apartment. This defendant, Mr. Perry, attempted to leave. He came out one of the doors. The police observed him. He pointed a gun at the officer, who then shot him. Mr. Perry fled the scene.
>
> He made several phone calls with the victim's cell phone. The police were able to identify him that way. They also were able to collect blood from the scene and identified him through his DNA collected from that blood on the scene as one of the individuals who had robbed Ms. Summerlin, taken her inside her apartment, and threatened her, as well.

On May 5, 2015, the Petitioner filed a petition for post-conviction relief claiming, in pertinent part, that his guilty pleas were involuntary and that he received the ineffective assistance of counsel because trial counsel failed to present certain evidence, including the Petitioner's own testimony, at the suppression hearing and failed to challenge the count of the indictment charging employing a firearm during the commission of a dangerous felony because it failed to name the underlying dangerous

felony. The post-conviction court appointed counsel, and counsel filed an amended petition, basically reiterating the issues raised in the original petition.

At the outset of the evidentiary hearing, post-conviction counsel advised the post-conviction court that the Petitioner "has asked me to inform the Court that, due to me not doing all the things that he has requested of me, it is his belief that it is my duty as his attorney to make a motion to withdraw." The post-conviction court noted that it appointed post-conviction counsel at the Petitioner's request and that counsel had been representing the Petitioner almost eight months. The court informed the Petitioner that he would have to represent himself if the court allowed counsel to withdraw. The Petitioner explained that he did not want to represent himself but that he had wanted post-conviction counsel to hire a blood spatter expert and add "something" to the petition for post-conviction relief. The court told the petitioner that it was "not going to listen to that right now" and that "[y]ou may have a seat, sir."

Post-conviction counsel called trial counsel as the Petitioner's first witness. Trial counsel testified that the Petitioner was identified as one of the perpetrators from DNA analysis on blood at the crime scene. At the hearing on the motion to suppress, trial counsel argued that the trial court should suppress the DNA results because the police shot the Petitioner as he was fleeing; thus, "that spilling of blood was [an] unconstitutional, unreasonable search and/or seizure of [the Petitioner]." The police shot the Petitioner twice, one time in the hip, which supported the defense's theory that the police shot him while he was running away. Counsel said that he did not remember if he reviewed the Petitioner's medical records but that he would not have put "much weight" on the records because "the positioning of the body is so mobile and fluid that you can't get any expert to say that, 'I can tell you where a person was standing based on where they got shot.'" He also did not "see any realistic need" for a blood spatter expert or an expert on crime scene reconstruction.

Trial counsel testified that the police also shot the Petitioner's right hand and that the police claimed the Petitioner was holding a gun in his right hand at the time of the shooting. Post-conviction counsel asked if trial counsel and the Petitioner considered whether the Petitioner could have been shot through his right palm without damaging the gun. Trial counsel explained that "if it had been a through-and-through [wound], and the weapon . . . didn't have any injury on it, then . . . that would have caused me to at least look into it for further investigation." However, counsel remembered the wound as being "superficial and on the outside" of the hand, not through the Petitioner's palm. Therefore, he did not investigate the gun.

Trial counsel testified that the State presented proof at the suppression hearing that the police shot the Petitioner in self-defense, and the trial court denied the motion. Trial

counsel said he would have talked with the Petitioner about his right to appeal the suppression issue if the Petitioner went to trial and was convicted. However, counsel did not consider appealing a certified question of law after a guilty plea to be an option because this court often dismissed such appeals on procedural grounds.

Trial counsel denied prohibiting the Petitioner from testifying at the suppression hearing. He said that he did not remember his specific conversation with the Petitioner about whether the Petitioner should testify but that he "strongly urge[d]" any defendant not to testify when he did not need the defendant's testimony. He said he did not need the Petitioner's testimony in this case because the testimony "had to do with the officers" and because counsel did not think the testimony "would come across as necessarily the most credible evidence." Moreover, the Petitioner's testimony would have been subject to impeachment at trial.

Trial counsel testified that he never considered arguing that the count of the indictment charging employing a firearm during the commission of a dangerous felony was void for failing to name the underlying dangerous felony. He said that he knew "there was something wrong" with the indictment but that he thought "it was something that was either amendable, or would be an election at trial, or that could be waived in the negotiation process."

On cross-examination, trial counsel testified that an attorney from the public defender's office originally was appointed to represent the Petitioner. However, that attorney had to withdraw, and the trial court appointed trial counsel. Trial counsel acknowledged that he met with the Petitioner multiple times, went over discovery with the Petitioner, answered the Petitioner's questions, and explored possible defenses. Counsel discussed filing a motion to suppress with the Petitioner, counsel filed the motion, and counsel and the Petitioner discussed whether the Petitioner should testify at the suppression hearing. Based on counsel's advice, the Petitioner decided not to testify. The Petitioner could have testified, though, if he had wanted to testify. Counsel said that the suppression issue was "new, fascinating, and interesting law that no one had ever argued before" but that the trial court denied the motion and set a trial date. Counsel acknowledged that the Petitioner understood his options of going to trial or pleading guilty and that the Petitioner understood his possible punishments.

Trial counsel testified that the State made a plea offer to the Petitioner as a Range I offender but that the Petitioner turned down the offer. Counsel later learned that the Petitioner might qualify for a higher range of punishment and asked that the State re-extend the original offer. The State did so, and the Petitioner accepted the offer. The Petitioner never requested that trial counsel obtain certain evidence or expert opinions for trial and never had any issues or concerns about his guilty pleas.

Trial counsel testified that he did not remember his specific conversation with the Petitioner regarding the count of the indictment charging employing a firearm during the commission of a dangerous felony but that they would have discussed the issue. Counsel said he thought the Petitioner waived the issue by pleading guilty. In any event, even if that count of the indictment had been dismissed, "the State still had enough charges that they could push the [plea] offer up into the same amount of time at the same percentage, or close to the same percentage." Counsel said he was comfortable with the outcome of the Petitioner's case.

Upon being questioned by the post-conviction court, trial counsel testified that he had been licensed to practice law since 2000 and that he also was licensed in Arkansas. He said that he practiced criminal law almost exclusively, that he had tried "hundreds and hundreds" of cases, and that he was death penalty qualified.

The Petitioner testified that he explained what happened on June 28, 2011, to trial counsel and that counsel filed a motion to suppress based on the police's use of deadly force. The Petitioner asked that trial counsel obtain evidence to show the police were lying about shooting him in self-defense. Specifically, the Petitioner asked that counsel obtain his medical records "to show the angle in which I was standing when [the police officer] shot me, which caused me to run, and then the angle from which he shot me the second time, which was from behind." The officer claimed at the suppression hearing that the Petitioner ran toward him with a gun in the Petitioner's right hand. Therefore, the Petitioner should have received a "head-on" gunshot wound. The medical records, though, would have shown that the Petitioner "got shot from the rear and from a side angle," which would have destroyed the officer's credibility. The Petitioner also asked that trial counsel obtain blood trail photographs to prove the officer shot him first in the right hand, not the hip. The photographs would have shown blood on a wall, demonstrating that the Petitioner was bleeding from his hand by the time he got to the wall and prior to his being shot in the hip. The Petitioner also stated that if a gun had been in his right hand, then he would have dropped the weapon or blood would have been on the butt of the gun. No blood was on the butt of the gun allegedly used by the Petitioner, but counsel failed to introduce the evidence at the suppression hearing. The Petitioner's fingerprints were not on the gun, and trial counsel also failed to present that evidence at the hearing.

The Petitioner testified that he asked that trial counsel and post-conviction counsel obtain a diagram of the crime scene in order to show the exact location of the Petitioner and the officers at the time of the shooting. Post-conviction counsel advised the post-conviction court that the Petitioner did request that he obtain a crime scene diagram and photographs. Post-conviction counsel said he did not obtain the evidence because he did

not think he could persuade the post-conviction court that the evidence would have made a difference at the suppression hearing.

The Petitioner testified that he "constantly" told trial counsel at the suppression hearing that he was ready to testify. However, counsel told the Petitioner that he "[didn't] think it would be a good idea to testify" because the State might be able to use the testimony against the Petitioner. The Petitioner said that according to case law, the State could not use a defendant's suppression hearing testimony against him at trial. Therefore, he still wanted to testify. The suppression hearing lasted two days, and the Petitioner kept thinking he was going to get to testify but never did. He said the trial court should have asked trial counsel at the hearing if the Petitioner wanted to testify.

The Petitioner testified that trial counsel did not represent him adequately, that counsel "seemed as if he was just trying to hurry up and get done with the case," and that counsel told him that counsel did not have a defense for him at trial. The Petitioner said that counsel would not do what he wanted counsel to do, that he thought he would lose at trial, and that he was "pressured into signing the guilty plea . . . because of what [trial counsel] wasn't doing." The Petitioner said he could not discuss his issues about trial counsel with the trial court at the plea hearing because the court had warned him that he would have to represent himself.

Upon being questioned by the post-conviction court, the Petitioner acknowledged that he complained to the trial court about his public defender, that the trial court removed her from his case, and that the trial court appointed another attorney. That attorney had a conflict, so the trial court appointed trial counsel. The Petitioner acknowledged that the trial court advised him that the court would not appoint a fourth attorney and that the Petitioner would have to represent himself if he could not get along with trial counsel. The Petitioner said that due to the trial court's "ultimatum," he was afraid to complain about trial counsel at the guilty plea hearing.

On cross-examination, the Petitioner acknowledged that he never told the trial court that he wanted to testify at the suppression hearing. He also acknowledged that he received the minimum sentence for each offense when he pled guilty, that he could have received more "time" if he had gone to trial, and that he thought his pleas were in his best interest. The Petitioner testified under oath at the plea hearing that he did not have any complaints about trial counsel. At the post-conviction evidentiary hearing, though, he said he was "really skeptical" about pleading guilty.

Upon being questioned by the post-conviction court, the Petitioner acknowledged that the trial court asked him at the plea hearing if he had any complaints about counsel and that he answered, "Not really." He also acknowledged telling the trial court that he

- 6 -

was satisfied with trial counsel's performance. He said that he lied at the plea hearing and that he could not tell the truth because he thought the trial court would reject the plea agreement and force him to represent himself at trial. He stated, "I didn't want to sign for a plea because he did a bad job for me. I wanted to sign . . . for the plea because he wasn't doing a good job, and he wasn't doing what I was asking him to do."

At the conclusion of the evidentiary hearing, the post-conviction court orally denied the petition for post-conviction relief.[1] First, the court found the Petitioner not credible in his testimony. Regarding the Petitioner's claim that he did not plead guilty voluntarily, the court noted that the Petitioner accepted a plea agreement with the "'absolute minimum punishment'" he could have received for the offenses and that he could have received "'significantly more time in prison'" if found guilty at trial. The court stated that "this is another case of classic buyer's remorse," that it questioned the Petitioner extensively at the plea hearing, and that the Petitioner said at the plea hearing that he was satisfied with counsel's representation. Thus, the court found that the Petitioner pled guilty voluntarily.

Regarding the Petitioner's claim that he received the ineffective assistance of trial counsel at the suppression hearing, the post-conviction court reiterated that the police had the right to use deadly force against the Petitioner. The court accredited counsel's testimony that he advised the Petitioner not to testify at the hearing and that the Petitioner chose not to testify. The post-conviction court also found that trial counsel made a strategic decision not to present the Petitioner's medical records, blood trail photographs, and fingerprint evidence at the suppression hearing. The court noted that post-conviction counsel introduced the medical records into evidence at the post-conviction evidentiary hearing and that the records were not helpful to the post-conviction court. The court concluded that the Petitioner did not receive the ineffective assistance of counsel.

As to the indictment, the post-conviction court stated that the only felony charged in the indictment that could have served as the underlying dangerous felony for employing a firearm during the commission of a dangerous felony was aggravated burglary and, therefore, that the Petitioner was not confused as to the charge. The court stated that, in any event, the Petitioner waived any defect in the indictment by pleading guilty. In sum, the post-conviction court found that the Petitioner failed to prove that trial counsel was deficient or that he was prejudiced by any deficiency and denied the petition.

## II. Analysis

---

[1] The court also filed a written order denying relief.

On appeal, the Petitioner maintains that his guilty pleas were involuntary because if he had not pled guilty, the trial court would have forced him to go to trial with the ineffective assistance of counsel or representing himself. The Petitioner maintains that he received the ineffective assistance of counsel because trial counsel failed to call him as a witness at the suppression hearing, which would have been "affirmative proof of the unlawful use of deadly force against him," and because counsel failed to present certain evidence at the suppression hearing to discredit the police officer's testimony. He asserts that if he had testified and counsel had presented the evidence, the outcome of the suppression hearing would have been different. Finally, the Petitioner claims that trial counsel was ineffective for failing to object to his guilty plea for employing a firearm during the commission of a dangerous felony because the indictment failed to name the underlying dangerous felony for the offense. The State argues that the post-conviction court properly denied the petition. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally, [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component. Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

As to the Petitioner's claim that his guilty pleas were involuntary, the post-conviction court found that the guilty plea hearing transcript demonstrated otherwise. Our review of the transcript shows that the trial court advised the Petitioner about his rights and thoroughly questioned him about his pleas. The trial court also advised the Petitioner about the charges and potential punishments. The court repeatedly asked the Petitioner if he understood, and the Petitioner, a high school graduate, said yes. At one

point, the Petitioner asked the trial court about his consecutive sentences, release eligibilities, and sentence reduction credits, and the trial court explained them to him. The following colloquy then occurred:

> **THE COURT:** Now, are you satisfied with what [trial counsel] has done for you, sir?
>
> **THE DEFENDANT:** Yeah, I'm satisfied.
>
> **THE COURT:** Do you have any complaints about anything that [trial counsel] has done while he's been representing you?
>
> **THE DEFENDANT:** Not really.
>
> **THE COURT:** I know at one point you had another lawyer; is that correct?
>
> **THE DEFENDANT:** Yes.
>
> . . . .
>
> **THE COURT:** . . . And I removed [that lawyer] because you told me, "Judge Coffee, [she] and I are not getting along, I don't think she's doing a good job, I need another lawyer," and I appointed [trial counsel]; is that correct?
>
> **THE DEFENDANT:** Yes.
>
> . . . .
>
> **THE COURT:** Did you have any witnesses or anything that you wanted [trial counsel] to investigate for you?
>
> **THE DEFENDANT:** I don't think I had no witnesses.
>
> **THE COURT:** So did you ask [trial counsel] to do anything that he did not do for you? And I know that you might not like the sentence, but do you understand that this is the absolute minimal sentence that you could have gotten on these cases?
>
> **THE DEFENDANT:** Yes, sir.

. . . .

**THE COURT:** Now, if you have any complaints at all about anything that [trial counsel] has done, now is the time for you to let me know. Do you understand that?

**THE DEFENDANT:** Yes, sir.

. . . .

**THE COURT:** You'll start talking to these folks [in prison], and they'll tell you to file a complaint against your lawyer, file what's called a post-conviction that says, "I don't like the way my lawyer represented me. I should have taken this case to trial, and had my lawyer represented me correctly, I would have gone to trial on this case. I didn't want to enter a plea." And if you have any complaints at all, now is the time for you to tell me that, "Judge Coffee, I'm not happy with [trial counsel]." Do you understand that, sir?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Now, do you have any complaints about anything that [trial counsel] did while he was representing you, sir?

**THE DEFENDANT:** I wanted to sign for a plea.

**THE COURT:** Yes, sir.

**THE DEFENDANT:** I wanted to sign for a plea. You know, I wanted to sign for something reasonable.

The trial court gave the Petitioner several opportunities to complain about trial counsel at the plea hearing. The Petitioner made no complaints and said he wanted "to sign for something reasonable." Trial counsel testified at the evidentiary hearing that the Petitioner wanted to plead guilty and that the Petitioner never had any issues or concerns about his guilty pleas. The Petitioner acknowledged at the evidentiary hearing that he received the minimum sentences possible and that the pleas were in his best interest. The post-conviction court found that the Petitioner pled guilty voluntarily. We agree with the post-conviction court.

- 11 -

As to the Petitioner's claim that he received the ineffective assistance of counsel because of trial counsel's failures at the suppression hearing, we initially note that the transcript of the post-conviction evidentiary hearing demonstrates that the Petitioner had a transcript of the suppression hearing at the evidentiary hearing. However, post-conviction counsel did not introduce the suppression hearing transcript into evidence. About one month after the Petitioner filed his appellate brief, post-conviction counsel filed a motion requesting to supplement the record with the transcript. This court granted the motion. Subsequently, the Shelby County Criminal Court Clerk informed this court in writing that the transcript was "not to be found." Therefore, the transcript remains absent from the appellate record.

The Petitioner claims that if trial counsel had called him to testify and presented certain evidence at the suppression hearing, then the officer who testified that he shot the Petitioner in self-defense would have been discredited and the outcome of the hearing would have been different. However, without a transcript of the hearing, we cannot determine the merits of the Petitioner's claim that counsel's ineffectiveness resulted in the trial court's denying the motion to suppress. In any event, the post-conviction court accredited trial counsel's testimony that the Petitioner chose not to testify at the suppression hearing and that counsel made a strategic decision not to present the evidence. Furthermore, as noted by the post-conviction court in its written order denying relief, the Petitioner failed to present any expert testimony at the evidentiary hearing to support his claims regarding the evidence. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, the Petitioner has failed to demonstrate that counsel was deficient or that he was prejudiced by any deficiency.

As to the Petitioner's claim that trial counsel should have challenged his guilty plea to the firearm charge, Tennessee Code Annotated section 39-17-1324(b)(1) provides that it is an offense to employ a firearm during the commission of a dangerous felony. Although the statute requires that the State include the underlying dangerous felony as a separate count in the same indictment, see Tennessee Code Annotated section 39-17-1324(d), the statute is silent as to whether the State must name the underlying dangerous felony in the count charging a violation of Tennessee Code Annotated section 39-17-1324. After the Petitioner's evidentiary hearing, our supreme court ruled that while the "best practice" was for the State to name the underlying dangerous felony in the indictment, it was not required to do so as long as the entire indictment "sufficiently apprised the defendant of the nature and cause of the accusation against him and enabled him to adequately prepare a defense to the charge." State v. Duncan, 505 S.W.3d 480, 491 & n.13 (Tenn. 2016).

In the instant case, the indictment charged the Petitioner with especially aggravated kidnapping and aggravated burglary, which are both "dangerous felonies."

Tenn. Code Ann. § 39-17-1324(i)(1)(E), (H).  The indictment alleged especially aggravated kidnapping "with a deadly weapon" but did not specify the use of a firearm. Therefore, we disagree with the post-conviction court's conclusion that aggravated burglary could have been the only underlying dangerous felony for the firearm charge. See Tenn. Code Ann. § 39-17-1324(c) (providing that "[a] person may not be charged with a violation of subsection (a) or (b) if possessing or employing a firearm is an essential element of the underlying dangerous felony as charged"); Duncan, 505 S.W.3d at 487 (because indictment failed to provide that dangerous weapon was a firearm, charged offense was not disqualified from being dangerous felony under section 39-17-1324(c)).  Nevertheless, the Petitioner knew that the two possible underlying dangerous felonies were to be tried in the same trial as the firearm charge.  Therefore, the Petitioner was not surprised at having to make a defense against either felony.  See Duncan, 505 S.W.3d at 491; State v. Mark Brian Dobson, No. M2015-00818-CCA-R3-CD, 2016 WL 7212574, at *12 (Tenn. Crim. App. at Nashville, Dec. 13, 2016), perm. app. denied, (Tenn. Feb. 24, 2017).  Accordingly, trial counsel was not ineffective for failing to challenge the indictment.

## III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE

- 13 -